UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Harold Jackson, | ) | Case No. 2:14-cv-01911-RMG |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM IN SUPPPORT OF |
| v. | ) | MOTION FOR PROTECTIVE ORDER |
| | ) | OR, IN THE ALTERNATIVE, |
| Trumpf Medical Systems, Inc., | ) | *IN LIMINE* |
| | ) | |
| Defendant. | ) | |
| | ) | |

<u>INTRODUCTION</u>

Plaintiff filed this premises liability action as a non-jury matter. (*See* Docket Entry No. 3, ¶ B). Defendant answered and demanded a jury trial, stating the claims "should be tried by a jury". (Docket Entry No. 12, ¶ B).

Plaintiff claims he sustained personal injuries from a fall on Defendant's premises. Defendant disputes the nature and extent of Plaintiff's injuries.

To that end, Defendant retained and disclosed as an expert witness David N. DuPuy, M.D., an orthopedic surgeon in Matthews, North Carolina (Docket Entry No. 31), who has neither examined nor treated Plaintiff, but who holds the following opinions:

> My impression is that the treatment for his lumbar spine and the initial lumbar injury and heel injury are related to the fall, but that the later cascade of symptoms to the coccyx with all the subsequent coccyx treatment and perceived disability from the coccydynia are based 100 percent on subjective complaint by the patient without substantiating objective evidence and are not specifically related to the full. My impression is that he is at maximum medical improvement and would have been within three months at the most which would be the healing time for the endplate injury of L1. ... When he was at maximum medical improvement, there would have been no permanent restrictions. He would not have needed further treatment or medication.

(Exhibit A – Medical Record Review report by Dr. DuPuy dated April 17, 2015).

Defense counsel recently requested that Plaintiff's counsel provide dates on which he would be available to attend a deposition of Dr. DuPuy, to be taken in North Carolina by defense counsel for the purpose of presenting his testimony at trial in lieu of live testimony (*i.e.,* a *de bene esse* deposition).  Plaintiff's counsel advised Defendant's attorney that he opposes the presentation of this witness' testimony via deposition; rather, Plaintiff's position is that, if the entire case is to be presented to a jury at trial, Dr. DuPuy should also testify in person before the jury so it can fully evaluate his testimony and credibility based on his live appearance at trial.

In discussions on this topic, defense counsel offered no basis for seeking to use Dr. DuPuy's deposition in lieu of live testimony except the fact Dr. DuPuy lives in North Carolina, more than 100 miles from trial, and thus beyond the Court's subpoena power.

Defendant thereafter noticed Dr. DuPuy's *de bene esse* deposition for June 10, 2015 "for the purposes of preserving his testimony for presentation at trial".  (Exhibit B – Notice of Video Deposition de Bene Esse).  This Motion in response to that notice.

<u>LEGAL STANDARDS</u>

1. <u>Protective Orders.</u>

Rule 26 provides a mechanism for parties to seek protection from certain discovery.  It states, in pertinent part:

> (1) *In General.*  A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending—or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken.  ...  The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> (A) forbidding the disclosure or discovery;

Fed. R. Civ. P. 26(c)(1)(A).

The Court has broad discretion in determining whether a protective order is proper under the circumstances. *Nix v. Holbrook,* 2015 U.S. Dist. LEXIS 17712 at p. *5 (D.S.C. 2015), *quoting Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 36, 104 S. Ct. 2199, 81 L. Ed. 2d 17 (1984). The mere fact the information sought via the requested discovery is generally relevant or discoverable is not a sufficient basis for the Court to refuse a protective order. *Nicholas v. Wyndham Int'l,* 373 F.3d 537, 543 (4th Cir. 2004). But, where the requested discovery would not likely lead to the discovery of admissible evidence, a protective order is appropriate. *See, e.g., THI of S.C. at Charleston v. Vance*, 2014 U.S. Dist. LEXIS 32120 at p. *5 (D.S.C. 2014).

2. Use of Deposition Testimony at Trial.

The use of *de bene esse* depositions is governed by Federal Rule of Civil Procedure 32. The pertinent portions of that rule state:

> *Unavailable Witness.* A party may use for any purpose the deposition of a witness, whether or not a party, if the court finds:
> …
>
> (B) that the witness is more than 100 miles from the place of hearing or trial or is outside the United States, unless it appears that the witness's absence was procured by the party offering the deposition;
> …
>
> (D) that the party offering the deposition could not procure the witness's attendance by subpoena; or
>
> (E) on motion and notice, that exceptional circumstances make it desirable— in the interest of justice and with due regard to the importance of live testimony in open court—to permit the deposition to be used.

Fed. R. Civ. P. 32(a)(4).[1]

---

[1] This rule was previously located at subsection 32(a)(3); therefore, some older cases cited in this memorandum refer to that previous number.

Courts have applied this rule to depositions of expert witnesses where, for legitimate and unanticipated reasons, the expert was not available to testify at trial. …

Courts have, however, also exercised their discretion to refuse to admit the deposition testimony of an expert witness where the proponent failed to make adequate efforts to secure the attendance of the expert witness at trial. … [U]nlike the typical witness whose involvement with the case may depend on the fortuity of his observing a particular event and whose presence at trial is often involuntary, a party ordinarily has the opportunity to choose the expert witness whose testimony he desires and to arrange for the expert to appear and testify at the trial. Furthermore, because a retained expert witness usually has no involvement with the case other than his willingness to review the case and testify as an expert, a party is likely to have the ability to select an expert witness who will or should be available to testify at trial.

*Holmes v. Merck & Co.,* 2006 U.S. Dist. LEXIS 42370 at pp. *5-7, 2006 WL 1744300 (D. Nev. 2006) (citations omitted).

Similarly, Federal Rule of Evidence 804 provides for the admissibility of hearsay statements made in a deposition by a witness who is "unavailable". F.R.E. 804(b)(1)(A). As relevant to the present motion, Rule 804 defines "unavailability" as follows:

*Criteria for Being Unavailable.* A declarant is considered to be unavailable as a witness if the declarant:
    …

(5) is absent from the trial or hearing and the statement's proponent has not been able, by process or other reasonable means, to procure:

(A) the declarant's attendance, in the case of a hearsay exception under Rule 804(b)(1) or (6); or

(B) the declarant's attendance or testimony, in the case of a hearsay exception under Rule 804(b)(2), (3), or (4).

But this subdivision (a) does not apply if the statement's proponent procured or wrongfully caused the declarant's unavailability as a witness in order to prevent the declarant from attending or testifying.

F.R.E. 804(a).

Courts that have been asked to address the issue [of whether a witness was unavailable under Rule 804 solely because he resided more than 100 miles from trial] have distinguished between unavailability of fact witnesses and expert

- 4 -

witnesses. Parties are expected to use other reasonable means to procure the attendance of their experts because the parties select their experts and arrange for their appearance at trial.

*Aubrey Rogers Agency v. AIG Life Ins. Co.,* 2000 U.S. Dist. LEXIS 997 at pp. *9-10, 2000 WL 135129 (D. Del. 2000) (footnotes omitted).

Stated differently, when a party selects an out-of-state expert, it effectively "procures" the expert's absence from court by voluntarily creating a situation where the witness is beyond the subpoena power. *Id.* at p. *19.

## ARGUMENT

1. The Issue Before the Court.

In this case, the Defendant elected to retain an expert witness located in Matthews, North Carolina[2], to provide expert testimony in a case pending in the District of South Carolina. At the time Defendant hired Dr. DuPuy, it knew he was beyond the Court's subpoena power. Dr. DuPuy is an orthopedist, an area of medicine where there is certainly no shortage of similarly qualified individuals within South Carolina.[3]

The sole reason Defendant cites for its proposal to depose Dr. DuPuy for use at trial rather than having him testify live is the fact that he lives and works just beyond the geographic reach of this Court's subpoena power. There is no apparent reason to suggest Defendant would be unable to have Dr. DuPuy attend the trial of this matter in person and testify live.

---

[2] As the attached map from Dr. DuPuy's medical practice's website (Exhibit C) demonstrates, Dr. DuPuy's office is actually not far from the South Carolina-North Carolina border. Per Google Maps (Exhibit D), the distance from his office to South Carolina is only approximately 12 miles. As an aside, it appears his office is less than 100 miles from at least three federal courthouses within the District of South Carolina.

[3] A "Medical Board Member Lookup" search of the South Carolina Department of Labor, Licensing and Regulation's website reveals 800 licensed orthopedic surgeons within the State of South Carolina. (Exhibit E).

The Court is, therefore, at a fork in the road regarding Dr. DuPuy's trial testimony. One path is well-worn: Dr. DuPuy can testify in person like most retained expert witnesses, thereby allowing the parties the opportunity to question him about developments that occur during trial and giving the jury the ability to evaluate his credibility in person. The other path is less travelled when compared to common trial practice: Dr. DuPuy testifies remotely from the comfort of his own office, a location that requires Plaintiff's attorneys to incur additional travel time and expense – weeks to months before trial and the potential developments that may occur there – via a pre-recorded video that prevents the jury from viewing him in person and assessing his credibility first-hand.

The Defendant bears the burden of providing the Court with a reason to deviate from common practice and to permit out-of-court statements in lieu of live testimony at trial. *Id.* at p. *6 (proponent of deposition testimony has burden of demonstrating witness' unavailability). It does not meet this burden with respect to Dr. DuPuy.

2. A Protective Order is Appropriate Because the Deposition Would Not Be Admissible at Trial.

Dr. DuPuy's deposition should not be admissible at trial; therefore, the Court should issue a protective order forbidding Defendant from taking his deposition.

In what has been described as "a trend among courts interpreting rule 32(a)(3)(B) of the Federal Rules of Civil Procedure … and analogous state rules", *Evans v. Langston*, 2007 Utah App. 240 at p. *18, 166 P.3d 621, 625 (2007), *cert. denied*, 2007 Utah LEXIS 204 (2007), courts often require a party to demonstrate it has undertaken reasonable affirmative efforts to bring its own expert witness to trial before the court will entertain a finding of unavailability under Fed. R. Civ. P. 32 or F.R.E. 804.

*Id.* at p. *18, 166 P.3d at 625-26; *accord Aubrey Rogers Agency v. AIG Life Ins. Co.,*

*supra;* and *Holmes v. Merck & Co., supra.*

Although it is a state court decision, *Caron v. General Motors Corp.,* 37 Mass.

App. Ct. 744, 643 N.E.2d 471 (1994) provides an excellent review of federal court

decisions on this topic.   The court there notes that, while federal cases are not

unanimous, the better-reasoned decisions are those which require the proponent of the

expert testimony to demonstrate it has exercised diligence in seeking to have the expert

attend trial before the court will consider the witness unavailable.

> Unlike fact witnesses, who are determined by their personal knowledge of relevant facts, regardless of where they live or work, a party normally has broad latitude in selecting his expert witnesses.  By selecting an expert from Arizona, the plaintiff's counsel "procured" the absence of his expert from the Commonwealth in the sense that he voluntarily created a situation in which his expert would be out of the Commonwealth unless he should make arrangements for the expert's appearance at trial. "Unlike the typical witness whose involvement with the case may depend on the fortuity of his observing a particular event and whose presence at the trial is often involuntary, a party ordinarily has the opportunity to choose the expert witness whose testimony he desires and invariably arranges for his presence privately, by mutual agreement, and for a fee.  Although a requirement of an attempt to secure the voluntary attendance of a witness who lives beyond the subpoena power of the court is not ordinarily imposed before prior testimony can be used in civil litigation . . ., we think that such a requirement is particularly appropriate when dealing with the testimony of expert witnesses whose earlier attendance is almost invariably secured by such voluntary arrangements." *Carter-Wallace, Inc. v. Otte,* 474 F.2d 529, 536 (2d Cir. 1972), *cert. denied,* 412 U.S. 929, 37 L. Ed. 2d 156, 93 S. Ct. 2753 (1973).  While there are many Federal decisions that do not differentiate between expert witnesses and fact witnesses in applying Fed. R. Civ. P. 32(a)(3)(B), we are inclined to agree with those decisions that, given the latitude of choice in selecting experts and the general preference of the rules for testimony by live witnesses rather than depositions, accord the judge discretion to exclude the deposition of an expert witness where the judge is not satisfied that the party proponent has made a reasonable effort to secure the expert's presence at the trial.  *See, e.g., Hanson v. Parkside Surgery Center,* 872 F.2d 745, 750 (6th Cir. 1989); *Polys v. Trans-Colorado Airlines, Inc.,* 941 F.2d 1404, 1410 (10th Cir. 1991); *In re Air Crash Disaster at Stapleton Int'l. Airport,* 720 F. Supp. 1493, 1501-1502 (D. Colo. 1989); *Myers v. Alessi,* 80 Md. App. 124, 138-139, 560 A.2d 59 (1989); *Thompson v. Merrell Dow Pharmaceuticals, Inc.,* 229

N.J. Super. 230, 252-253, 551 A.2d 177 (1988) ("We agree with the rationale of Judge Friendly in *Carter-Wallace v. Otte,* that expert witnesses are not unavailable simply because they are not subject to service of process. . . . It is the responsibility of the party offering the expert to ascertain the willingness and availability of the expert to appear at trial. The proponent of the expert must attempt to arrange a trial date at which the expert can appear. Since the expert is under the control of the offering litigant, due diligence must be used to secure the attendance at trial.")

*Caron,* 37 Mass. App. Ct. at 749-51, 643 N.E.2d at 474-75 (footnotes omitted).

Some cases holding otherwise can be distinguished on the basis that the expert witness was actually unavailable due to reasons other than residing beyond the court's subpoena power. *See, e.g., id.* at 750 n. 8, 643 N.E.2d at 475 n. 8; *Evans, supra* (court could consider expert's health issues in determining whether he was available). Other cases are distinguishable because the party offering the expert testimony was not the party who retained the expert. *See, e.g., Niles v. Owensboro Med. Health Sys.,* 2011 U.S. Dist. LEXIS 86932, 2011 WL 3439278 (W.D. Ky. 2011); *Nichols v. American Risk Mgmt.,* 2000 U.S. Dist. LEXIS 807 at pp. *6-7, 45 Fed. R. Serv. 3d 1311 (S.D.N.Y. 2000) ("In any event, the Court's Opinion should not be read for the proposition that use of an expert's deposition testimony will be permitted at trial in every case where an expert deponent is unavailable. Indeed, given the historical preference for live testimony and the strategy of limiting aggressive examination of opposing experts at depositions, a judge would be warranted in requiring live expert testimony despite Rule 32(a)(3)(B) under appropriate circumstances." [citations and footnotes omitted]).

Also, it appears a number of cases decided in the 21 years since *Caron* have required a showing greater than simple distance to determine a retained expert is unavailable (thus, the "trend" comment in *Evans*). Indeed, a review of case law on this issue shows that, in many cases where the party proposing the expert was also the

party who hired the expert and the only basis to claim the expert was unavailable was his location outside the geographic limits of the court's subpoena power, the courts have required proof the proponent of the testimony undertook reasonable efforts to obtain the expert's attendance at trial. *See, e.g., Kirk v. Raymark Indus.*, 61 F.3d 147, 164, 165 (3d Cir. 1995), *cert. denied*, 516 U.S. 1145, 134 L. Ed. 2d 95, 116 S. Ct. 1015 (1996) ("Kirk claims that Dr. Burgher, who is a resident of Nebraska, was beyond her ability to subpoena and was thus unavailable. *See* Fed. R. Civ. P. 45(c)(3)(A)(ii). However, Kirk made no independent attempt to contact Dr. Burgher, offer him his usual expert witness fee, and request his attendance at trial. Because Dr. Burgher was never even as much as contacted, Kirk has failed to prove that she used 'reasonable means' to enlist his services.").

Courts have also used balancing test to determine whether to allow the expert's deposition in lieu of live testimony. Perhaps the earliest iteration of such a balancing test can be found in *In re Air Crash Disaster at Stapleton International Airport, Denver,* 720 F. Supp. 1493 (D. Colo. 1989), where the court set forth these factors to consider:

- Proponent's need for the evidence to be presented via the deposition;

- Opposing party's opportunity to cross-examine the witness on those issues;

- Nature of the evidence to be presented;

- Jury's need to observe the witness' demeanor and credibility; and

- The *actual* unavailability of the witness, rather than just his mere geographic distance from the courthouse.

*Id.* at 1502.

Courts after that case have continued to balance these factors. *See, e.g., A.H. v. Evenflo Co.,* 2013 U.S. Dist. LEXIS 124499 at pp. *29-32 (D. Colo. 2013), *aff'd* 579 Fed.

Appx. 649, 655 (10th Cir. 2014); *Forrester Envtl. Servs. v. Wheelabrator Techs.,* 2012 U.S. Dist. LEXIS 48846 at pp. *7-8 (D.N.H. 2012).

Applying those factors to disallow an expert's deposition testimony although he was more than 100 miles from the trial, the *In re Air Crash Disaster* court noted:

> Under the circumstances, the ability of the jury to personally consider and evaluate the witness's credibility was of paramount concern. Mere inconvenience to the witness does not outweigh the substantial need to evaluate the demeanor of a witness presenting controversial testimony of questionable relevance. Nor does inconvenience outweigh the unfairness of limiting an opponent's right to demonstrate varying interpretations of the facts on which the witness bases his testimony. Considerations of fairness are particularly important when the offering party fails to met the burden of establishing that the deposition is admissible as hearsay within the exception of Rule 804(b)(1).

720 F. Supp. at 1502.

In the present case, the only one of these factors that may favor Defendant is the arguable need to present Dr. DuPuy's opinion at trial. However, this need could just as easily be met by having Dr. DuPuy testify in person or by retaining an expert who resides within the Court's subpoena power. Additionally, Defendant can question Plaintiff's treating physicians about the subject matter discussed in Dr. DuPuy's report.

On the other hand, the other factors strongly favor excluding the deposition testimony and requiring Defendant to call Dr. DuPuy live at trial.[4] The defense may argue Plaintiff has the same opportunity to cross-examine in a deposition as he would at trial. However, this argument is illusory when one considers that Plaintiff would lose the ability to question Dr. DuPuy about any developments that may occur between the taking of the deposition and the presentation of the defense case (including anything that may occur at trial) and that, by having to cross-examine the witness prior to trial,

---

[4] Ironically, one of the factors favoring live testimony at trial is the need for the jury to evaluate Dr. DuPuy's credibility, a consideration Defendant at least impliedly endorsed when it demanded a jury trial. (Docket Entry No. 12, ¶ B).

Plaintiff would be forced to reveal a portion of his trial strategy before presenting his case-in-chief, thereby allowing Defendant the ability to cross-examine Plaintiff's witnesses differently and to prepare its own witnesses in a fashion designed to ameliorate any detrimental effects of Plaintiff's cross-examination of Dr. DuPuy.

In short, because Dr. DuPuy is not unavailable for trial, the Court should grant the present motion and issue a protective order preventing Defendant from taking his *de bene esse* deposition.

3. Allowing Defendant to Take and to Use Dr. DuPuy's Deposition Would Cause Plaintiff Oppression, Undue Burden, and/or Expense.

For many of the reasons outlined by the cases discussed above, Plaintiff would suffer unfair prejudice (whether characterized as "oppression, undue burden, or expense") if Defendant were permitted to depose Dr. DuPuy and to use his deposition in lieu of live testimony at trial.  Therefore, a protective order is appropriate under Rule 26.

Specifically, Plaintiff would be negatively affected and prejudiced in the following concrete, specific ways if the Court were to deny the present motion:

- Plaintiff's counsel would have to incur the additional time and expense of round-trip travel to Matthews, North Carolina, for the deposition;

- Plaintiff would incur the additional costs of a deposition transcript and video;

- Plaintiff would, in effect, be required to reveal his trial strategy prior to trial (see discussion above);

- Plaintiff would lose the ability to question Dr. DuPuy about any developments that may occur between the deposition date and the time his deposition is presented at trial (this is particularly important where, as here, the witness is an expert who is offering opinions based upon other evidence);

- The jury would be deprived of the ability to evaluate Dr. DuPuy's credibility the same as if he were present and testifying live, which is doubly impaired in light of the limits a pre-trial deposition would place upon Plaintiff's ability to conduct an effective cross-examination of the witness.

In short, the Court should issue a protective order to avoid the oppressive, burdensome, and expensive prejudicial effects on Plaintiff of a deposition as proposed by Defendant.    This would not prevent Defendant from presenting Dr. DuPuy's testimony at trial via live testimony.

<u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court grant his Motion for Protective Order or, in the Alternative, *in Limine* so as to prevent Defendant from deposing its retained expert in advance of trial and then presenting his deposition testimony instead of live testimony and cross-examination in the presence of the jury.

Respectfully submitted,

Jennifer Munter Stark, Esquire
Fed. ID No. 09364
210 Wingo Way #300
Mount Pleasant, SC  29464
Phone: (843) 972-0004
Fax:  (843) 792-0006
jmunterstarklaw@gmail.com

and

PETERS, MURDAUGH, PARKER,
   ELTZROTH & DETRICK, P.A.

By:    */s/ Bert G. Utsey, III*
       Bert G. Utsey, III
       Fed. ID No. 1045
       123 Walter Street
       Post Office Box 1164
       Walterboro, SC 29488
       Phone: (843) 549-9544
       Fax: (843) 549-9546
       butsey@pmped.com

Attorneys for Plaintiff

May 22, 2015
Walterboro, South Carolina