UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Harold Jackson, ) | Case No. 2:14-cv-01911-RMG |
| ) | |
| Plaintiff, ) | |
| ) | REPLY MEMORANDUM IN SUPPPORT |
| v. ) | OF MOTION FOR PROTECTIVE ORDER |
| ) | OR, IN THE ALTERNATIVE, |
| Trumpf Medical Systems, Inc., ) | *IN LIMINE* |
| ) | |
| Defendant. ) | |

Plaintiff replies in summary fashion to specific points raised in Defendant's Memorandum in Opposition to Plaintiff's Motion to Prohibit Deposition (filed in response to Plaintiff's Motion for Protective Order or, in the Alternative, *in Limine*) as follows:

1. <u>Plaintiff did not serve a "burdensome subpoena".</u>

Footnote 1 to Defendant's Memorandum claims Plaintiff has engaged in a "concerted effort" to prevent Dr. DuPuy from participating in this case and that Plaintiff served a "burdensome subpoena" on Dr. DuPuy. No one has moved to quash the subpoena. It is a typical subpoena served on medical expert witnesses, particularly ones – like Dr. DuPuy – who commonly testify for defendants or their insurers that plaintiffs are not as injured as they claim.[1] The subpoena is not unduly burdensome and does not exceed the scope of Rule 26; instead, it seeks to obtain legitimate cross-examination materials. *See Yoho v. Thompson,* 345 S.C. 361, 548 S.E.2d 584 (2001).

---

[1] Dr. DuPuy has previously admitted that he only testifies by deposition, that he provides between 30 to 40 depositions per year as a retained expert, that approximately 98% of his expert testimony has been on behalf of defendants, and that he generally offers the "opinion that there was no significant bodily damage". (*See* Exhibit A attached hereto [excerpts from deposition of Dr. DuPuy in *Moses v. Lathan,* Case No. 2012-CP-43-454, Court of Common Pleas, Sumter County, South Carolina]).

2. <u>Plaintiff's attorney did not "change his mind" about the deposition.</u>

Defendant quotes a portion of an email from Plaintiff's attorney to suggest Plaintiff's position changed and this somehow prejudiced Defendant. Specifically, Defendant claims: "Indeed, before changing his mind, even Plaintiff's counsel indicated that the deposition itself could be taken pending a later determination of its admissibility." (Defendant's Memorandum, p. 7).

In fact, a complete reading of Plaintiff's attorney's May 11, 2015 email unequivocally shows he was promptly notifying defense counsel that he opposed the use of Dr. DuPuy's deposition in lieu of live trial testimony, a position the Plaintiff has consistently held. Perhaps the email should have said defense counsel was "free to notice his deposition" rather than "free to depose him" but this really would not have made any difference to Defendant since its sole purpose for proposing the deposition was for use at trial (not discovery) and, in fact, Defendant *did* notice the deposition.

Regardless, the suggestion that this comment somehow induced detrimental reliance by defense counsel is unfounded when one considers the *entire* email exchange between counsel (attached as Exhibit B), wherein Plaintiff's attorney advised Defendant's attorney – before he noticed Dr. DuPuy's deposition – that he "anticipate[d] filing a motion to quash and/or for protective order" with regard to the deposition.

3. <u>"Unavailability" is not determined solely with reference to subpoena power.</u>

Defendant's Memorandum discusses portions of Rule of Civil Procedure 32 but fails to mention Rule of Evidence 804, which includes the additional qualification that, for a court to find a witness is "unavailable" for trial, the party offering his testimony must demonstrate he has not been able to procure the witness' attendance "by process or

other reasonable means". F.R.E. 804(a)(5). Defendant has offered no proof regarding its efforts to procure Dr. DuPuy's attendance at trial and, in fact, does not even claim that it has attempted to have him testify in person.

4. <u>Defendant "procured" Dr. DuPuy's absence from trial by retaining an out-of-state expert and making no affirmative effort to have him attend.</u>

Defendant's Memorandum uses a restrictive construction of the term "procure". As is clear from the cases cited in Plaintiff's Memorandum, most courts addressing the issue *sub judice* have gone beyond this restrictive construction when considering the admissibility of the deposition of a party's own expert witness. Those courts have viewed the term "procure" more broadly in that context.

The court in *Caron v. General Motors Corp.,* 37 Mass. App. Ct. 744, 643 N.E.2d 471 (1994), addressed the matter head-on: "By selecting an expert from Arizona, the *plaintiff's counsel 'procured' the absence of his expert* from the Commonwealth in the sense that he voluntarily created a situation in which his expert would be out of the Commonwealth unless he should make arrangements for the expert's appearance at trial." *Id.* at 749-50, 643 N.E.2d at 474 (emphasis added).

Similarly, in *Aubrey Rogers Agency v. AIG Life Ins. Co.,* 2000 U.S. Dist. LEXIS 997, 2000 WL 135129 (D. Del. 2000), the district court stated:

> ARA must prove that it has been unable to procure Mr. Wise's attendance at trial by process or other reasonable means. ARA has demonstrated that Mr. Wise's attendance cannot be secured by process because he resides in Texas, more than 100 miles from this Court and, therefore, beyond its subpoena power. However, ARA has failed to prove that it has been unable to procure Mr. Wise's attendance "by other reasonable means." ARA has failed to demonstrate that it used other "reasonable means" to ensure Mr. Wise's presence at trial. There is nothing in the record to indicate that ARA has made any effort to secure Mr. Wise's attendance at trial or has even contacted Mr. Wise to "offer him his usual expert witness fee, and request his attendance at trial."

> Courts that have been asked to address the issue [of whether a witness was unavailable under Rule 804 solely because he resided more than 100 miles from trial] have distinguished between unavailability of fact witnesses and expert witnesses. Parties are expected to use other reasonable means to procure the attendance of their experts because the parties select their experts and arrange for their appearance at trial.

2000 U.S. Dist. LEXIS 997 at pp. *9-10 (footnotes omitted); *accord Kirk v. Raymark Indus.*, 61 F.3d 147, 164, 165 (3d Cir. 1995), *cert. denied*, 516 U.S. 1145, 134 L. Ed. 2d 95, 116 S. Ct. 1015 (1996).

    5.  <u>The Fourth Circuit has not adopted Defendant's position.</u>

While Defendant correctly states the Fourth Circuit has not "adopted the approach urged by Plaintiff" (Defendant's Memorandum, p. 5), it is equally important to note that it has neither rejected Plaintiff's approach nor adopted Defendant's position.

Further, in addressing the manner in which courts in other circuits and jurisdictions have dealt with the issue of whether a party's expert witness is unavailable for trial, Plaintiff has cited a number of decisions in support of his position, whereas none of the cases cited by Defendant deal with expert witnesses.

Defendant's cases are readily distinguishable. If anything, *Garcia-Martinez v. City and County of Denver*, 392 F.3d 1187 (10th Cir. 2004), indirectly supports Plaintiff's position; there, the court found that a plaintiff who fled the United States to avoid arrest on unrelated issues could not rely upon his absence to use his deposition at trial because he had, in effect, procured his own absence via voluntary conduct. *Daigle v. Maine Medical Center,* 14 F.3d 684 (1st Cir. 1994)[2] dealt with an absent fact witness

---

[2] Curiously, Defendant characterizes *Daigle* as among "more recent decisions" that it claims "have rejected Plaintiff's approach". (Defendant's Memorandum, p. 5). But many, if not most, of the cases cited by Plaintiff post-date the 1994 decision in *Daigle*. Moreover, *Daigle* did not consider the issue of an absent expert witness and therefore did not address – much less reject – Plaintiff's position herein.

who had moved to another state. Similarly, *Houser v. Snap-on-Tools Corp.,* 202 F. Supp. 181 (D. Md. 1962) addressed the situation of fact witnesses who could not attend trial (one of whom was in the hospital).

The cases cited by Plaintiff represent the more recent and more prevailing view of courts when dealing with the specific issue presented here, the alleged unavailability of a party's own expert witness.

### 6. Dr. DuPuy's alleged inconvenience in attending trial does not outweigh Plaintiff's right to full, fair, and timely cross-examination of defense experts.

In its Memorandum in Opposition, as well as its Motion to Admit, Defendant asserts that Dr. DuPuy would be inconvenienced by coming to trial and that this could affect his medical practice. These arguments are illusory. Dr. DuPuy was a stranger to this case until he agreed to accept a fee to become involved. When he did so, he received no guarantee he could avoid testifying in person at trial. Instead, he voluntarily assumed that risk. He cannot now claim that having to testify live is unfairly prejudicial.

On the other hand, the prejudice to Plaintiff – who has a right to a fair trial, including fair confrontation and cross-examination of the witnesses offered against his case – is palpable. Several prejudicial effects are explained in Plaintiff's Memorandum and are not repeated herein. As a supplement to those, though, Plaintiff asks the Court also to consider the prejudice that would occur to him if he were required to reveal his entire cross-examination strategy at a deposition of Dr. DuPuy, months before trial, thereby allowing Defendant to alter its trial strategy (including altering its questions of other witnesses and, possibly, withdrawing Dr. DuPuy as a witness) if Plaintiff is successful in discrediting Dr. DuPuy's opinions and/or credibility.

The Court should not deprive Plaintiff of his right to a full, spirited cross-examination of Dr. DuPuy in the presence of the jury.

                              Respectfully submitted,

                              Jennifer Munter Stark, Esquire
                              Fed. ID No. 09364
                              210 Wingo Way #300
                              Mount Pleasant, SC  29464
                              Phone: (843) 972-0004
                              Fax:  (843) 792-0006
                              jmunterstarklaw@gmail.com

                              and

                              PETERS, MURDAUGH, PARKER,
                                 ELTZROTH & DETRICK, P.A.

By:    */s/ Bert G. Utsey, III*
                              Bert G. Utsey, III
                              Fed. ID No. 1045
                              123 Walter Street
                              Post Office Box 1164
                              Walterboro, SC 29488
                              Phone: (843) 549-9544
                              Fax: (843) 549-9546
                              butsey@pmped.com

                              Attorneys for Plaintiff

June 5, 2015
Walterboro, South Carolina